UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANNY TERRANCE,

                  Plaintiff,        **DECISION AND ORDER**
   -vs-                                 **No.10-CV-6450T**

CITY OF GENEVA, NEW YORK

                  Defendant.
_____

**I.   Introduction**

Plaintiff Danny Terrance ("Terrance") has filed a complaint against Defendant City of Geneva, New York ("the City"), requesting a declaration that the City of Geneva Municipal Code, Part II, General Legislation, Chapter 285 ("Chapter 285") is unconstitutional. Terrance also seeks an injunction against the City's enforcement of Chapter 285. The City has filed a pre-answer motion to dismiss under Fed. R. Civ. P. 12(b)(6).

**II.   Factual Background**

Chapter 285, passed on April 2, 2008, places residency restrictions on certain levels of sex offenders, as designated by New York State's Sex Offender Registration Act ("SORA"). Any registered level two or level three sex offenders (i.e., those classified as having a medium to high risk of committing another offense), are permanently precluded from residing one thousand feet from a school or five hundred feet from a park, playground, or daycare center in Geneva–regardless of that person's parole or

-1-

probationary status. See City of Geneva Municipal Code, Part II, General Legislation, § 285-1(A-E)(quoted in, e.g., Defendant's Memorandum of Law at 1-2).

Chapter 285 exempts from its requirements any sex offender who already resides within one thousand feet of a school or within five hundred feet of a park, a playground, or a daycare center as of April 2, 2008. Sex offenders who move to a residence in violation of Chapter 285 receive ninety days in which to find an alternative residence before any civil fine is imposed. There are no criminal penalties for violating Chapter 285.

Terrance is a resident of Geneva and has been adjudicated as a level three sex offender by the New York State Division of Criminal Justice Services ("NYSDCJS"). Accordingly, Terrance has been deemed to have a high risk of committing another sexual offense. Terrance was convicted on March 2, 1999, when he was twenty-nine-years old, of first degree sexual abuse of a thirteen-year-old girl. He is no longer under any probationary or parole supervision.

On April 26, 2010, Terrance notified the City that he had moved his residence, to a location which is within five hundred feet of a playground, in violation of Chapter 285. The City notified Terrance and informed him that failure to find new housing within ninety days would result in a civil fine.

The conflict between New York State law and the City's Chapter

285 is that Terrance's current disputed residence is not prohibited according to State residency restrictions under N.Y. Penal Law § 65.10(4)(a). The State residence restrictions apply only to level three sex offenders who are also subject to a sentence of probation or parole (conditional discharge). Chapter 285 expands residency restrictions to all level two and level three sex offenders, including those who are no longer subject to a sentence of probation or parole. Plaintiff has been designated a level three sex offender, but he is not subject to a sentence of probation or parole.

On July 23, 2010, Terrance, represented by counsel, filed a complaint in State Court, asserting that Chapter 285 is preempted by SORA, and that it violates his rights under the Ex Post Facto Clause, the Equal Protection Clause, the Due Process Clause, and the Contracts Clause of the United States Constitution.

The City removed the complaint on the basis that this Court has original jurisdiction over Terrance's claims that Chapter 285 violates several provisions of the Federal Constitution. See 28 U.S.C. §§ 1331; 1441(b). Plaintiff has not moved to remand the matter to State court.

The City moves to dismiss the complaint, arguing that Chapter 285 is a proper exercise of a local government's police power to protect the safety and welfare of its citizens. Plaintiff opposed the motion, stating that even if the motion were construed as a

motion for summary judgment, the complaint should stand and that relief is warranted. The City filed a reply memorandum of law.

For the reasons that follow, the Court finds that Chapter 285 of Geneva's Municipal Code is preempted by New York State's comprehensive, detailed, and thorough scheme for regulating sex offenders. Accordingly, judgment in favor of Plaintiff is granted to the extent that Chapter 285 is declared invalid and will not be given effect. Because of this disposition, the Court need not rule on Plaintiff's Federal constitutional claims. Defendant's motion to dismiss is accordingly denied as moot.

**III. Discussion**

    **A.   Pendent Jurisdiction**

Plaintiff's first cause of action alleges that Defendant lacked the power under New York law to enact the ordinance and, if such power did exist, that the field had been preempted by the State legislature. In its motion to dismiss, the City argues for finding compatibility between its ordinance and the legislation enacted by New York State regarding residency restrictions for registered sex offenders. Based upon the case law cited by the parties, the Court concludes that there is a serious question of the validity of the ordinance as a matter of State law.

Plaintiff has not moved to remand all or part of this action to State court, and neither party has questioned whether this Court has jurisdiction to consider the legal question of preemption.

Because the acceptance of pendent jurisdiction is discretionary with the district court, United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966), the Court has determined that it may exercise pendent jurisdiction over the State claim of preemption. Accord Claridge House One, Inc. v. Borough of Verona, 490 F. Supp. 706, 709-10 (D. N.J. 1980) (accepting pendent jurisdiction over claim that State law preempted a local ordinance where Federal claims possessed some merit and supported a pendent State law claim) (citing Louise B. v. Coluatti, 606 F.2d 392, 400 (3d Cir. 1970) (a constitutional claim will support pendent jurisdiction if that claim is not "wholly insubstantial", "obviously frivolous", or "no longer open to question") (quoting Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (quotation marks omitted)).

Based on the facts summarized above, Terrance has set forth several constitutional claims that cannot be regarded as frivolous. In particular, Terrance's Ex Post Facto Clause[1] claim potentially has merit. See Berlin v. Evans, 31 Misc.3d 919, 923 N.Y.S.2d 828 (N.Y. Sup. Ct. 2011). In Berlin, the petitioner challenged the New York State Division of Parole's application to him of N.Y. Exec. Law § 259-c(14), which prohibits individuals who are on parole for

---

[1] The Ex Post Facto Clause of Article I, Section 10 of the Constitution prohibits the States from enacting laws that increase punishment for criminal acts after they have been committed. See generally Calder v. Bull, 3 U.S. 386, 390 (1798); see also Smith v. Doe, 538 U.S. 84, 92 (analyzing Ex Post Facto challenge to an Alaska statute requiring sex offenders to register).

certain categories of sex crimes from residing within 1,000 feet of schools where children under the age of 18 are enrolled. Petitioner Berlin contended that, as applied to his circumstances, the statute was an unconstitutional Ex Post Facto law because he committed the criminal offense before the effective date of the statute and the statute increased the penalty for the crime by effectively banishing him from residing in Manhattan. 923 N.Y.S.2d at 829.

The court in Berlin agreed that under the United State Supreme Court's framework for analyzing such claims, the statute was excessive with regard to the nonpunitive purpose of public safety and that the magnitude of the restraint involved in residency restrictions was sufficient for a lack of individualized assessment to render the statute punitive. Berlin, 923 N.Y.S.2d at 835-36. The court cited cases from four other states in which the application of similar statutes to sex offenders was found to have violated prohibitions on Ex Post Facto laws. Id. (citing F.R. v. St. Charles County Sheriff's Department, 301 S.W.3d 56 (Mo. 2010); Commonwealth v. Baker, 295 S.W.3d 437 (Ky. 2009); State v. Pollard, 908 N.E.2d 1145 (Ind. 2009); Mikaloff v. Walsh, No. 5:06-CV-96, 2007 WL 2572268 (N.D. Ohio Sept. 4. 2007)).

Here, given that the State claim arises out of facts identical to the claims on which the Federal claims rest, "it is obvious that economy, efficiency and convenience all favor extending pendent jurisdiction." Claridge House One, Inc., 490 F. Supp. at 710.

Furthermore, deciding the State law claim will make it unnecessary to consider Plaintiff's constitutional claims, a factor which also favors taking pendent jurisdiction over the preemption claim. Id. (citing, inter alia, Hagans, 415 U.S. at 546; Siler v. Louisville & Nashville R.R. Co., 213 U.S. 175, 193 (1909)).

Accordingly, the Court finds that it has pendent jurisdiction over the State-law preemption claim and that it would be an appropriate exercise of discretion to take jurisdiction over that claim. Accord Claridge House One, Inc., 490 F. Supp. at 710.

**B.  Preemption**

New York courts have on numerous occasions dealt with the issue of whether a municipal ordinance is invalid because the State legislature has preempted the area that the municipality had sought to enter. E.g., Village of Nyack v. Daytop Vil., Inc., 78 N.Y.2d 500, 505 (N.Y. 1991). The preemption doctrine represents a fundamental limitation on a municipalitiy's "home rule" powers. Local police power may not be exercised in an area in which it is preempted by State law. Jancyn Mfg. Corp. v. Suffolk Co., 71 N.Y.2d 91, 96 (N.Y. 1987).

It is well settled that "[p]reemption applies both in cases of express conflict between local and State law and in cases where the State has evidenced its intent to occupy the field[.]" Albany Area Bldrs. Assn. v. Town of Guilderland, 74 N.Y.2d 372, 377 (N.Y. 1989). Indeed, "[i]t is enough that the Legislature has impliedly

evinced its desire [to occupy an entire field] and that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area[.]" New York State Club Assn., Inc. v. City of N.Y., 69 N.Y.2d 211, 217 (N.Y. 1987). "In that event, a local government is 'precluded from legislating on the same subject matter unless it has received clear and explicit' authority to the contrary[.]" DJL Restaurant Corp. v. City of N.Y., 96 N.Y.2d 91, 95 (N.Y. 2001)(quotation omitted). The State's intent to occupy an entire field additionally may be implied "from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area[.]" Albany Area Bldrs. Assn., 74 N.Y.2d at 377.

Applying these principles to the case at hand, this Court agrees with the New York State courts that have considered local ordinances similar to the City's Chapter 285, that the New York State Legislature has enacted a comprehensive and detailed regulatory scheme regarding the registration and regulation of sex offenders, preempting local legislation on this subject. Doe v. County of Rensselaer, 24 Misc.3d 1215(A), 901 N.Y.S.2d 898, 2009 WL 2340873 (N.Y. Sup. Ct. (Rensselaer Co.) June 29, 2009); People v. Blair, 23 Misc.3d 902, 873 N.Y.S.2d 890 (N.Y. City Ct. (Albany) 2009) ("The State's legislative pronouncements to date,

unquestionably establish, to the Court's satisfaction, that the regulation and management of sex offenders (including sex offender residency restrictions) is the exclusive province of the State, and thus, Local Law No. 8 is preempted by State Law and will not be given effect."); People v. Oberlander, 22 Misc.3d 1124(A), 880 N.Y.S.2d 875, 2009 WL 415558 (N.Y. Sup. Ct. (Rockland Co.) Jan. 22, 2009).

The Court agrees with these courts that "the Sex Offender Registration Act, as well as other State laws, demonstrate the Legislature's intent to provide a comprehensive and evolving regulation over the lives of convicted sex offenders." People v. Blair, 23 Misc.3d at 905, 873 N.Y.S.2d at 893. The State law now provides, inter alia, that when sex offenders whose victims were under the age of 18 and level three offenders are sentenced to conditional discharge or probation, the sentencing court must:

> require, as a mandatory condition of such sentence, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in subdivision fourteen of section 220.00 of this chapter, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen while one or more of such persons under the age of eighteen are present . . . .

N.Y. Penal Law § 65.10(4-a)(a). Thus, N.Y. Penal Law § 65.10(4-a) "already establishes a de facto residency restriction by prohibiting certain sex offenders from knowingly 'entering into or upon' 1,000 feet of 'school grounds' or any other facility used for the care of children under the age of 18." People v. Blair, 23

Misc.3d at 908, 873 N.Y.S.2d at 894.

The State's comprehensive legislative scheme is further illustrated by the Legislature's enactment of the Sex Offender Management and Treatment Act (L. 2007, ch. 7), which, among other things, "create[d] a new Mental Hygiene Law article 10-provid[ing] that offenders convicted of enumerated crimes, including sex offenses, may be transferred to psychiatric hospitals after their release from prison if certain procedures are followed." Id. (quoting State ex rel. Harkavy v. Consilvio, 8 N.Y.3d 645, 651 (N.Y. 2007)). With the enactment of the Sex Offender Management and Treatment Act, the New York State Legislature acknowledged, among other things, the need for flexibility in the State's management and treatment of sex offenders. Id. This policy that stands in contrast to Chapter 285's inflexible, blanket exclusion.[2] Plaintiff thus has demonstrated a clear conflict between Defendant's ordinance and New York State's policy. See Claridge House One, Inc., 490 F. Supp. at 711 ("Decisive, however, on the issue of preemption [under New Jersey law] is that defendant's ordinance conflicts with state policy.").

As the court noted in People v. Blair, "[p]erhaps the most compelling evidence" of the State's intent to occupy the field of

---

[2] The City relies upon Chapter 285's inflexibility in support of its argument that Terrance was not denied due process when he was not afforded a hearing to make an individualized determination of his risk to the community, because the ordinance applies regardless of the individual's particular risk level.

sex offender regulation (including the residency of said offenders) is found in Chapter 568 of the Laws of 2008, entitled, 'Placement of Certain Sex Offenders.'" 23 Misc.3d at 909, 873 N.Y.S.2d at 895. The Governor's "Approval Memorandum" to Chapter 568 of the Laws of 2008,[3] provides in relevant part, that

> Finding suitable housing for any offender—and especially for those who are returning to the community after serving a long prison sentence—is an enormous challenge given the shortage of affordable housing in many communities. For sex offenders who are seeking housing, these placements are made more challenging by well-intentioned: (1) State laws restricting sex offenders who are on probation or parole from entering within 1000 feet of school grounds; and (2) the proliferation of local ordinances imposing even more restrictive residency limitations on registered sex offenders. One result of these restrictions is that the Division of Parole, local probation departments and local social services officials struggle daily to find suitable housing for these offenders. *This bill recognizes that the placement of these offenders in the community has been and will continue to be a matter that is properly addressed by the State.*

Bill Jacket to Chapter 568 (Assembly Bill 4988), Laws of New York, 2008 (emphasis supplied) (quoted in People v. Blair, 23 Misc.3d at 910, 873 N.Y.S.2d at 896 and, e.g., Plaintiff's Opposition Memorandum of Law at 11).

The City argues that while the State has decided that level three sex offenders on probation or parole may not live within

---

[3] Chapter 568 enacted changes to New York's Executive Law and Social Services Law relating to prior approval of sex offenders' housing by certain State agencies, the Division of Parole, the Division of Probation, and the Office of Temporary and Disability Assistance.

-11-

1,000 feet of a school, it has left local government with the power to place "additional, limited restrictions on where other sex offenders may reside, or where level three sex offenders such as Danny Terrance may reside after their period of parole or probation is over." Defendant's Reply Memorandum of Law at 6. The City attempts to distinguish the Bill Jacket to Chapter 568 quoted above, stating that is limited in reach only to probationary or paroled sex offenders, and that it does not override local residence restrictions placed on other sex offenders.

The Court notes, however, that none of the New York State courts to have considered the preemption issue have recognized such a distinction. Nor have these courts read the Governor's Approval Memorandum to Chapter 568 as impliedly granting municipalities the authority to restrict the housing of sex offenders other than those on probation or parole. Rather, these courts have found the legislative history of Chapter 568 to be clear and compelling evidence that New York has intended to preempt the entire legislative field with regard to sex offender regulation and management. This was so, even though the local ordinances at issue in People v. Blair and Doe v. County of Rensselaer operated in the same manner as the City's Chapter 285, that is, to exclude all level two and three sex offenders from residing within a certain distance of schools or daycare facilities, regardless of their status as probationers or parolees. E.g., Doe v. County of

Rensselaer, 2009 WL 2340873, at *1; People v. Blair, 23 Misc.3d at 903.[4]

The City further argues that Knudsen v. Lax, 17 Misc.3d 350, 842 N.Y.S.2d 341 (N.Y. Sup. Ct. (Jefferson Co.) 2007), read together with N.Y. Real Property Law ("R.P.P.") § 235f-(8) negate Plaintiff's preemption argument. However, Knudsen only supports the proposition that a landlord may evict a tenant for violating a valid Federal, State, or local law. Knudsen, 17 Misc.3d at 355. In analyzing whether a tenant could break a lease when a sex offender moved into an adjacent apartment, the court noted in dicta that R.P.P. § 235-f prohibited a landlord from removing a registered sex offender either as a guest or occupant of a tenant's leasehold based solely on that designation—"unless perhaps his right 'to restrict occupancy in order to comply with federal, state or local laws, regulations, ordinances or codes' could be construed to apply if the leasehold was located within an area which excluded sex offenders." Id. (internal citation omitted). Notably, the courts in Blair, Doe, and Oberlander did not mention the 2007 Knudsen

---

[4] In People v. Oberlander, the defendant was alleged to have violated the terms of his probation by violating a local ordinance prohibiting convicted sex offenders from residing, working, or loitering withing a "child safety zone." In finding that the ordinance was preempted by State law, the court relied upon New York's detailed and comprehensive legislative scheme to find an intent to preempt the field could be "clearly inferred". The court went on to find, in any event, that the ordinance impermissibly conflicted with the State's enactments in that it prohibited all housing described in the statute without regard to the approval of the probation department. Thus, the distinction urged by the City here is not decisive.

decision, which further supports the conclusion that it is inapposite to the present case.

The City contends that New York has "explicitly stated" municipalities may enact legislation such as Chapter 235, citing as evidence a reference on the NYSDCJS website cautioning sex offenders that there "may be" local laws in particular municipalities restricting where sex offenders may reside. The Court agrees with Plaintiff that this statement does not expressly or impliedly convey that the State approves of local residency restrictions, especially when compared to the substantial evidence demonstrating the State's intent to reserve to itself this area of legislation. See also Doe v. County of Rensselaer, 2009 WL 2340873, at *3 (summarizing New York's detailed legislative scheme relating to the community management of sex offenders). New York's pervasive and in-depth regulatory scheme supports the conclusion that the Legislature "intended the rules on this subject to be uniform throughout the State, without variation among municipalities and with its legislation being exclusive," Claridge House, Inc., 490 F. Supp. at 711, in the field of sex offender regulation and community management.

## IV. Conclusion

The Court agrees with the cogent and thorough opinions of the New York State courts discussed above that the State's legislative pronouncements to date establish that the regulation and management

-14-

of sex offenders (including sex offender residency restrictions) is the exclusive province of the State. Thus, for the reasons discussed above, the Chapter 285 (City of Geneva Municipal Code, Part II, General Legislation, Chapter 285) is preempted by New York State Law and will not be given effect.

Accordingly, judgment in favor of Plaintiff is granted to the extent that Chapter 285 is declared invalid and will not be given effect. Because of this disposition, the Court need not rule on Plaintiff's Federal constitutional claims.

Defendant's motion to dismiss is hereby dismissed as moot.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:   June 28, 2011
         Rochester, New York